Howard A. Janssen (State Bar No. 045385)
Richard P. Doyle, Jr. (State Bar No. 112459)
JANSSEN DOYLE, LLP
2540 Camino Diablo, Suite 220
Walnut Creek, CA  94597
Telephone:	(925) 295-1805
Facsimile:	(925) 295-1801

**Attorney for Defendants**

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIRON CORPORATION, a Delaware corporation,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>SOURCECF, INC.; SOURCECF CLINICAL RESEARCH & DEVELOPMENT, L.L.C.; MAXOR NATIONAL PHARMACY SERVICES CORPORATION d/b/a IV SOLUTIONS; FOUNDATION CARE L.L.C.; and PHARMACEUTICAL SPECIALTIES, INC.,<br><br>　　　　　　　Defendants. | Civil Action No:  C 05-01938 WHA<br><br>**DEFENDANTS' TRIAL BRIEF** |

## I.  INTRODUCTION

There are five defendants in this case.  Three (Maxor National Pharmacy Services Corp., Foundation Care, L.L.C. and Pharmaceutical Specialties, Inc. [hereafter, the Pharmacy Defendants]) are pharmacies that have operated in the United States for many years.  As part of their professional duties, they have filled prescriptions for a variety of drugs used in a product called the eFlow nebulizer, a newly patented device cleared for marketing and use.

The remaining two defendants are SourceCF companies, one of which has licensed and

No. C 05-01938 WHA                                   1

1   distributes the eFlow nebulizer. Chiron is now asserting infringement of eight different patent
2   claims against the five defendants in different combinations. Charts setting out those issues now
3   before the Court are attached hereto as Exhibit 1.

4   Defendants submit that Chiron cannot meet its burden of proof as to any of the asserted
5   causes of action and claims of patent infringement. Chiron cannot demonstrate the required
6   showing of underlying direct infringement, either literal or under the doctrine of equivalents; nor
7   can it demonstrate indirect infringement by any of these five entities.

8   Many of the legal issues remaining for trial are addressed in Defendants' motions in
9   limine, which were prepared before Chiron very recently waived damages and a jury, and
10  dropped several of its asserted patent claims. While the Court's standing order states that
11  motions in limine are seldom useful in bench trials, in this case Defendants believe that ruling on
12  those motions will demonstrate that Chiron simply cannot prove its case.

13  The remainder of this brief will address the evidence applicable to the elements of the
14  various causes of action that Chiron alleges, as set out in the Joint Pretrial Statement.

15

## A.       Direct Infringement

17  In the Joint Pretrial Statement, Chiron identifies the Pharmacy Defendants as the only
18  alleged direct infringers. The factual issue, as identified by Chiron, is whether the Pharmacy
19  Defendants directly infringe the '907 patent:

20

21  *"… by <u>formulating</u>, <u>selling</u> and <u>marketing</u> compounded tobramycin solutions at*
22  *concentrations of 50 mg/ml and 40 mg/ml for use with a nebulizer called the eFlow®,*
23  *and <u>instructing</u> doctors and patients how to use these tobramycin formulations with the*
24  *eFlow®."*

25  The underlined activities noted above do not, as a matter of law, constitute practicing the
26  method of the claims of the '907 patent: "The law is unequivocal that the sale of equipment to
27  perform a process is not a sale of the process within the meaning of section 271(a)." *Joy Techs.,*
28  *Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed.Cir.1993). Similarly, in *Mendenhall v. Cedarapids, Inc.*,

No. C 05-01938 WHA                                2

5 F.3d 1557, 1579 (Fed.Cir. 1993), *cert. denied*, 114 S. Ct. 1540 (1994), the Federal Circuit emphasized that a person cannot *directly* infringe a *method* claim by manufacturing and selling an *apparatus* capable for carrying out the method. So (separate and apart from Defendants' denial of infringement and their assertion of defenses to infringement, discussed later) direct infringement cannot be found here.

**B.     Indirect Infringement**

**1.     Without Direct Infringement, There Can Be No Indirect Infringement**

Since Chiron cannot establish direct infringement by the Pharmacy Defendants and since they are the only persons or entities alleged in the Joint Pretrial to infringe directly, this Court need go no further.    Absent direct infringement, there can be no potential liability of any of the Defendants for indirect infringement. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) ["Absent direct infringement of the patent claims, there can be neither contributory infringement, [Citation omitted], nor inducement of infringement, [Citation omitted]." In accord, *Moba, B.V. v. Diamond Automation, Inc*. 325 F.3d 1306, 1318 (Fed. Cir. 2003).

If the Court does, however, find factual issues concerning the requisite underlying direct infringement, then there are two types of indirect infringement to be considered: inducement of infringement and contributory infringement. *Met-Coil Sys. Corp.,* 803 F.2d at 687  These are separate statutory causes of action, each requiring separate elements to be proved.

**2.     Inducement**

To prove inducement, Chiron needs to prove that: "defendant[s] possessed specific intent to encourage another's infringement and not merely that the defendant[s] had knowledge of the acts alleged to constitute inducement. The plaintiff has the burden of showing that the alleged infringers' actions induced infringing acts and that [they] knew or should have known [their] actions would induce actual infringement." *Manville Sales Corp. v. Paramount Systems, Inc*. 917 F.2d 544, 553 (Fed. Cir. 1990) citing *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d

No. C 05-01938 WHA             3

660, 668 (Fed. Cir. 1988).

Another widely cited statement of the required proof is: "[T]o sustain a claim of inducement, the plaintiff must establish that the defendant purposefully caused, urged, or encouraged another individual to infringe plaintiff's patent with knowledge of the likely infringing result." *Oak Industries, Inc., v. Zenith Electronics Corp.*, 697 F. Supp. 988 (N.D. Ill. 1988). Under the evidence in this case there can be no showing of that requisite intent, either as to the Pharmacy Defendants or as to the SourceCF defendants.

### a. Inducement as to the SourceCF Defendants

SourceCF CR&D only <u>supplies</u> the eFlow nebulizer to the Pharmacy Defendants for use with any drug or protocol as prescribed by a physician. As the Federal Circuit has stated under like facts: " … if a physician, without inducement by [drug company], prescribes a use of [drug] in an infringing manner, [drug company's] knowledge is legally irrelevant." *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1364 (Fed. Cir. 2003). SourceCF occupies the same position as the drug company in the cited case. So Chiron simply cannot meet this element of inducement by the SourceCF defendants, under the facts here.

### b. Inducement as to the Pharmacy Defendants

As to the Pharmacy Defendants, there is likewise no showing in the evidence of the element of purposeful intent to induce infringement. In fact, the evidence is completely to the contrary.

When the Pharmacy Defendants learned of the '907 patent (a prerequisite to liability for inducement), they immediately contacted Chiron to see if there was a business solution that could protect those few patients prescribed the eFlow nebulizer with 100mg/ml of tobramycin. When the parties were unable to find a resolution, the Pharmacy Defendants: (1) ceased selling that formulation; and (2) took the unusual step of moving for a permanent injunction themselves, so that the lawsuit would be over.

No. C 05-01938 WHA 4

Defendants' Trial Brief

These steps are the antithesis of purposeful inducement.[1]

When the Pharmacy Defendants continued thereafter to dispense formulations of 40 mg/ml and 50 mg/ml of tobramycin, the evidence will show that they did so in good faith, relying upon the claim language of the '907 patent claim, and their confirmation through the advice of counsel that these new concentrations were not infringing. That good faith reliance upon the advice of counsel negates the intent necessary as a prerequisite to liability for inducement. *Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.,* 194 F.3d 1250, 1261 (Fed. Cir. 1999). So nothing Defendants did, at any time, constituted inducement of infringement.

### 3. Contributory Infringement

To prove contributory infringement, Chiron needs to show that the defendants knew that the nebulizers they provided to the patients were especially made or adapted for practicing Chiron's '907 patent; **and** that those nebulizers are not a staple article suitable for a substantial noninfringing use. *Oak Industries, Inc., v. Zenith Electronics Corp.,* 697 F.Supp. 988, 994 (N.D. Ill. 1988). See also 35 U.S.C. §271(c): "Whoever offers to sell or sells within the United States or imports into the United States a …material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."

Chiron's assertions of contributory infringement fail against all defendants.

---

[1] This was never intended as a concession of infringement; but rather it was a business decision not to fight Chiron in litigation. As hereafter noted, the Pharmacy Defendants believed they could still provide formulations outside of the claimed parameters.

No. C 05-01938 WHA                                5
Defendants' Trial Brief

### a. The eFlow nebulizer was not especially made or adapted for practicing Chiron's '907 patent

The evidence will show that the eFlow nebulizer was made and being used prior to the issuance of the '907 patent. Therefore, the record is undisputed that the eFlow nebulizer was not especially made for practicing the '907 patent.

The evidence will also show that the eFlow nebulizer was not adapted for practicing the '907 patent. In fact, it is used without change or adaptation for the many drugs which are currently being prescribed in the eFlow nebulizer. The fact that neither of these requirements of Section 271(c) can be established should end the inquiry as to contributory infringement.

### b. The eFlow nebulizer is a staple article suitable for a substantial non-infringing use.

Additionally, the challenged eFlow nebulizer is suitable for, and currently has, substantial non-infringing uses. The Supreme Court has found that one additional use, comprising the majority of use, was sufficient to meet the substantial noninfringing use requirement. *Sony Corp. v. Universal City Studios*, 464 U.S. 417 (1984).

That test is more than met in this case. Defendants' Motion In Limine #4 on this issue describes some of the many medications for which the eFlow nebulizer has been used by patients. Here, the eFlow nebulizer is capable of delivering medicine of a nearly limitless formulation (specific drug, drug concentration, pH, osmolality, and pharmaceutical carrier) to treat a variety of pulmonary indications; and the evidence will show that it is in fact currently used to deliver over 10 medicines to patients.

Chiron has simply dodged this issue in its response to the pending Motion In Limine. Defendants submit that there is no credible evidence to support Chiron's position on these elements of proof of contributory infringement.

### c. Summary as to Contributory Infringement

Neither of these requirements, which exist in the conjunctive, can be met by Chiron based on the record in this case. So these contentions cannot be proved, and there is no contributory infringement. This Court can so find as a matter of law.

## C. Direct Infringement: Under The Doctrine of Equivalents

Returning to issues related to direct infringement, another issue for trial in this case is Chiron's assertion of infringement under the doctrine of equivalents. Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result. See *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997).

Significantly, *Warner-Jenkinson* requires that, as to this three-part test: "The determination of equivalence should be applied as an objective inquiry on an element-by-element basis." 520 U.S. at p. 40. As the Federal Circuit has succinctly put it: "The doctrine of equivalents must be applied on an element by element basis." *Phillips Petroleum Co. v. Huntsman Polymers Corp.,* 157 F.3d 866, 877 (Fed. Cir. 1998).

### 1. Specification Disclaimer Estoppel

Critical to the disposition of Chiron's assertions under the doctrine of equivalents is Defendants' Motion In Limine #2. It notes that the law prevents Chiron from recapturing by way of the doctrine of equivalents concentrations of tobramycin below 60 mg/ml, which were explicitly disclaimed by Plaintiff in U.S. patent 5,508,269 ('269). It is well established that where a patentee disclaims a structure, condition, range, or other embodiment of an invention, it cannot invoke the doctrine of equivalents to recapture that particular embodiment. *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed. Cir. 2001).

The substance of Motion #2 is that the '907 patent specifically incorporates by reference in its entirety Chiron's prior '269 patent which states in column 8, lines 27-30:

1  *"The dose lower than 60 mg of tobramycin per ml of diluted saline is not sufficient to suppress*
2  *the bacterium and to treat the infection.  Lower concentrations of tobramycin will not be*
3  *sufficiently effective in at least 90% of patients."*

4  Thus, Defendants submit that the '907 patent specifically disclaims any concentration below 60 mg/ml.  If that motion is granted, Defendants submit that Chiron cannot possibly prevail as to the doctrine of equivalents, because it has disclaimed concentrations below 60 mg/ml.

### 2. Analyzing Equivalents In Light of the Fact Chiron Cannot Get the Invention of the '907 Patent to Work

Another issue at trial concerning the doctrine of equivalents is that Chiron has moved to exclude evidence that it does not offer a product that incorporates the technology of the '907 patent. The fact that Chiron could not get its invention to work is clearly relevant to whether the eFlow nebulizer performs "substantially the same function in substantially the same way to obtain substantially the same result."  So Defendants believe it is important to look at any claimed commercial embodiments of the patented technology, or the lack of same.

As Defendants argue in their opposition to that motion, the proper inquiry under the doctrine of equivalents as to *result* is to compare the concentration of medication in the eFlow nebulizer being used to treat a patient *with the invention of the '907 patent*.  A study of the products incorporating that patent is certainly a necessary part of that analysis.

### D. Willful Infringement

The defendants do not infringe.  There is no direct infringement, either literal or under the doctrine of equivalents.  There is certainly no willful infringement: when defendants had knowledge of Chiron's patents and assertions, they acted reasonably. That reasonableness is evidenced, among other things, by the fact that voluntarily stopped dispensing prescriptions at one concentration, and switched to dispensing concentrations that they believed in good faith were outside of the language of the claims,  as confirmed by the opinion of competent legal

counsel. Defendants made a reasonable determination that they could continue to fill prescriptions received from a physician for patients.

## II. ADDITIONAL ISSUES

### A. Issues At Trial Concerning Safety And Efficacy

Defendants have filed Motion In Limine #3 to exclude evidence as to whether Defendants' accused device and/or formulations, both separately and/or in combination with each other, have been independently proven to be safe or effective. Evidence concerning whether these formulations have been proven to be safe or effective is not, Defendants assert, relevant to the issue of patent infringement.

The Court's resolution of this motion will have a substantial impact on the necessary trial time, as well as the breadth and complexity of the issues before the Court.

### B. Literal Infringement Issue: Claim Construction is Over

As noted in Defendants' Motion In Limine #1, Chiron seeks, inappropriately, to restate the patent's claim language to encompass the total dosage of drug being prescribed, rather than the concentration. Defendants there move to exclude evidence as to the total milligram dosage of tobramycin delivered by Defendants' accused formulations. Such evidence is not relevant because the claims of the '907 patent at issue do not set forth a total milligram dosage of tobramycin as a claim element or a treatment parameter. The Court will need to resolve this issue prior to hearing evidence concerning literal infringement.

Additionally, the evidence will show that the accused formulations of 40 mg/ml and 50 mg/ml do not literally infringe the element at issue, which covers "about 60 mg/ml to 200 mg/ml.

**C. Even if Chiron were able to meet its burden of proof as to its claims of literal infringement, the reverse doctrine of equivalents applies here.**

As the Federal Circuit stated in *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003), italics added below: "Under the reverse doctrine of equivalents, an accused product or process that falls within the literal words of a claim nevertheless may not infringe if the product or process "is *so far changed in principle from a patented article* that it performs the same or a similar function in a substantially different way." *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608-09, 70 S.Ct. 854 … (1950)." The *Amgen* opinion continues: "This doctrine is equitably applied based upon underlying questions of fact, [Citation omitted], when the accused infringer proves that, despite the asserted claims literally reading on the accused device, "*it has been so changed* that it is no longer the same invention. [Internal Citation omitted]."

Defendants will demonstrate that, as compared to the described or actual embodiment of Chiron's patented technology, utilizing the eFlow nebulizer results in delivering medication in a way that has been so changed that it is no longer the same invention as claimed in the '907 patent. This defense to literal infringement bars these claims, even if Chiron meets its prima facie case at trial, which Defendants assert it cannot.

**D. Background Concerning Chiron's Demand For Injunctive Relief**

Chiron is trying to protect its almost ten-year-old TOBI product and the slow, outdated nebulizer with which it must be used. In its over-zealousness, Chiron is going after the use of eFlow nebulizer alone and with any concentration of tobramycin (even though a specific concentration range is called for in the '907 patent), or with the use of any other drug (even thought the '907 patent is specific to tobramycin).

Today, Chiron has no new generation nebulizer to answer the needs of cystic fibrosis patients as promised in the '907 patent.

### E. Chiron's Intent In Bringing and Perpetuating This Litigation

But Chiron comes to this bench trial seeking *equitable relief*: a permanent injunction. One issue before the Court, by way of an in limine motion filed by Chiron, concerns its seeking to exclude evidence as to Chiron's alleged intent in pursuing this litigation.

As stated in *Mylan Pharmaceuticals, Inc. v. Thompson*, 268 F.3d 1323, 1331: "Defenses to allegations of patent infringement fall into two broad groups: statutory and equitable. ... The equitable defenses include unclean hands ...." So Chiron's unclean hands are a potential defense to its request for a permanent injunction.

It is black letter law that: "Bad intent is the essence of the defense of unclean hands." *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). As set forth in its separately submitted Introduction to this Opposition, Defendants will seek to prove that Chiron's entire pattern and practice, in its multiple suits filed against the Defendants, has been to push far beyond the boundaries of retaining a right to exclude the practice of the patent in suit. *It is the essence of Defendants' defense to assert Chiron's bad intent.*

Chiron's intent should indeed be weighed as part of the equities here, since Chiron is requesting injunctive relief which challenges the health of children and these young teens who may be better served by this new generation of patented nebulizer.[2] It is due to these inhaled antibiotics that children and young teens with cystic fibrosis are now, for the first time in history, able to live a more normal life.

First, Chiron wants children and those entering their teenage years, the principal group of non-compliant cystic fibrosis patients who are at greatest risk, to stop using the eFlow. Thus, these patients who need tobramycin to prevent irreversible loss of pulmonary capacity will only have access to Chiron's TOBI product. It is because of the inconvenience of the other nebulizer

---

[2] So why has Chiron been hounding the defendants with repeated litigation for the last two years? By way of background, the first lawsuit was filed in 2004 as an alleged safety and efficacy case, which the defendants resolved by adding a disclaimer to its website and certain literature. The current lawsuit was filed on May 10, 2005 (the day of issuance of the patent) as a patent infringement case directed to the pharmacists' use of 100mg/ml of tobramycin, which the defendants resolved by voluntarily agreed to stop using 100mg/ml of tobramycin, and to switch to a concentration below the covered "about 60mg/ml" of tobramycin. Chiron again asserted its '907 patent in regard to 50mg/ml of tobramycin and then 40mg/ml of tobramycin in what, is in effect, a third lawsuit.

that is used to administer TOBI that many of these patients would rather skip doses, miss days of therapy or not complete therapy rather than take the time required to nebulize TOBI.

Second, and of huge importance to the equities of this case, Chiron wants to make sure that no one has an eFlow nebulizer for any medication (even though the claims of the '907 patent are limited to a specific concentration of tobramycin, not use of a device for other purposes). Chiron is trying to sterilize the market, by having the eFlow taken away from any patient for whom it was prescribed for use with the many drugs that are clearly outside of the '907 patent.

Chiron's request for equitable relief to get the eFlow nebulizer off the market will punish all patients, whether on tobramycin or not.

### F.     Public Interest Considerations

Another issue that would be before the Court, if Chiron prevails at trial, is that this Court has the discretion to deny the request for injunctive relief. *Rite-Hite Corp. v. Kelley, Inc.*, 56 F.3d 1538, 1547 (Fed.Cir.1995) (en banc) (Nevertheless, "courts ... in rare instances [have] exercised their discretion to deny injunctive relief in order to protect the public interest."). The reality is that Chiron's litigation history with the Defendants, the scope of relief being requested, and the needs of patients create such a "rare instance" warranting the Court to exercise its discretion to protect the public interest.

### G.     Reserved: Defendants' Claimed Entitlement to Attorneys' Fee

Should Defendants prevail, it should be noted that their responsive pleading preserves their right to seek an award of attorney's fees against Chiron. One statutory basis for an award of attorney's fees in this case is 35 U.S.C. Section 285: "The court in exceptional cases may award reasonable attorney's fees to the prevailing party."

Defendants contend that this is such a case. While any argument on the merits of this issue is premature, it does seem appropriate to remind the Court by this brief mention that this is, conditionally, a pending issue.

JANSSEN DOYLE, LLP

No. C 05-01938 WHA                               12
Defendants' Trial Brief

## III. CONCLUSION

As Defendants explained in November in volunteering to be bound by a permanent injunction as a way to resolve this dispute, without a hearing on the merits, they are entitled to provide an advancement in therapy, outside the scope of the '907 patent, without being a defendant in litigation based on Chiron's intentionally undefined patent rights. Defendants offered to respect Chiron's patent rights without challenge, and that is why there is a permanent injunction.

But Chiron then decided to seek to use the relative term "about" to threaten *any* medical protocol below 60 mg/ml of tobramycin, and to challenge the use of the eFlow nebulizer with any drug. These issues of infringement, and Chiron's intent in pursing this litigation, remain for adjudication.

Dated: March 27, 2006

Respectfully submitted,

By: _____/s/_____
Richard P. Doyle, Jr.
Attorney for Defendants

# TABLE OF CONTENTS

I.  INTRODUCTION……………………………………………………………….1

    A.  Direct Infringement………………………………………………………..2

    B.  Indirect Infringement……………………………………………………...3

        1.  Without Direct Infringement, There Can Be No Indirect Infringement……………………………………………………3

        2.  Inducement…………………………………………………………..3

            a.  Inducement as to the SourceCF Defendants………………………4
            b.  Inducement as to the Pharmacy Defendants……………………....4

        3.  Contributory Infringement……………………………………………...5

            a.  The eFlow nebulizer was not especially made or adapted for practicing Chiron's '907 patent…………………………………………6
            b.  The eFlow nebulizer is a staple article suitable for a Substantial non-infringing use……………………………………………6
            c.  Summary as to Contributory Infringement………………………..7

    C.  Direct Infringement:  Under The Doctrine of Equivalents………………7
        1.  Specification Disclaimer Estoppel………………………………………7
        2.  Analyzing Equivalents In Light of the Fact Chiron Cannot Get the Invention of the '907 Patent to Work……………………………8

    D.  Willful Infringement……………………………………………………..8

II.  ADDITIONAL ISSUES…………………………………………………………9

    A.  Issues At Trial Concerning Safety And Efficacy………………………..9

    B.  Literal Infringement Issue:  Claim Construction is Over………………...9

    C.  Even if Chiron were able to meet its burden of proof as to its Claims of literal infringement, the reverse doctrine of equivalents Applies here……………………………………………………………10

    D.  Background Concerning Chiron's Demand For Injunctive Relief………10

    E.  Chiron's Intent In Bringing and Perpetuating This Litigation…………..11

    F.  Public Interest Considerations…………………………………………...12

JANSSEN DOYLE, LLP

G. Reserved: Defendants' Claimed Entitlement to Attorneys' Fee………...12

III. CONCLUSION……………………………………………………………..13

# TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*
314 F.3d 1313, 1351 (Fed. Cir. 2003)..................................................................................10

*Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*
890 F.2d 165, (9th Cir. 1989 ................................................................................................11

*Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*
339 U.S. 605, 608-09, 70 S.Ct. 854 … (1950).....................................................................10

*Joy Techs., Inc. v. Flakt, Inc.*,
6 F.3d 770, (Fed.Cir.1993).....................................................................................................2

*Manville Sales Corp. v. Paramount Systems, Inc.*
917 F.2d 544, (Fed. Cir. 1990)...............................................................................................3

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*
803 F.2d 684, (Fed. Cir. 1986)...............................................................................................3

*Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.*
194 F.3d 1250, (Fed. Cir. 1999).............................................................................................5

*Moba, B.V. v. Diamond Automation, Inc.*
325 F.3d 1306, (Fed. Cir. 2003).............................................................................................3

*Mylan Pharmaceuticals, Inc. v. Thompson*
268 F.3d 1323, 1331 ............................................................................................................11

*Oak Industries, Inc., v. Zenith Electronics Corp.*
697 F. Supp. 988 (N.D. Ill. 1988) ......................................................................................4, 5

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*
157 F.3d 866, (Fed. Cir. 1998)...............................................................................................7

*Rite-Hite Corp. v. Kelley, Inc.*
56 F.3d 1538, (Fed.Cir.1995)...............................................................................................12

*SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*
242 F.3d 1337 (Fed. Cir. 2001).............................................................................................7

*Sony Corp. v. Universal City Studios*
464 U.S. 417 (1984)...............................................................................................................6

*Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*
520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)....................................................7

JANSSEN DOYLE, LLP

*Warner-Lambert Co. v. Apotex Corp.*
316 F.3d 1348, (Fed. Cir. 2003)..................................................................................................4

*Water Technologies Corp. v. Calco, Ltd.*
850 F.2d 660, (Fed. Cir. 1988)....................................................................................................4

**STATUTES**

35 U.S.C. Section 271(c) .......................................................................................................5, 6

35 U.S.C. Section 285 ..............................................................................................................12

# **EXHIBIT 1**

# **CHARTS SUMMARIZING ISSUES FOR TRIAL**

FOR THE PHARMACY DEFENDANTS

Chiron's Final Infringement Contentions as to 50mg/ml of Tobramycin

| Claim No | About - Concentration of Tobramycin | Direct Inf-Literal | Direct Inf-Doctrine of Equivalents | Inducement | Contributory |
|---|---|---|---|---|---|
| 1 | **60-200 mg/ml** | x | x | x | x |
| 2 | 60-200 mg/ml | x | x | x | x |
| 3 | 60-200 mg/ml | x | x | x | x |
| 7 | 60-200 mg/ml | x | x | x | x |
| 8 | 60-200 mg/ml | x | x | x | x |
| 10 | 60-200 mg/ml | x | x | x | x |
| 11 | 60-200 mg/ml | x | x | x | x |
| 12 | 60-200 mg/ml | x | x | x | x |

Chiron's Final Infringement Contentions as to 40mg/ml of Tobramycin

| Claim No | About - Concentration of Tobramycin | Direct Inf-Literal | Direct Inf-Doctrine of Equivalents | Inducement | Contributory |
|---|---|---|---|---|---|
| 1 | **60-200 mg/ml** |  | x | x | x |
| 2 | 60-200 mg/ml |  | x | x | x |
| 3 | 60-200 mg/ml |  | x | x | x |
| 7 | 60-200 mg/ml |  | x | x | x |
| 8 | 60-200 mg/ml |  | x | x | x |
| 10 | 60-200 mg/ml |  | x | x | x |
| 11 | 60-200 mg/ml |  | x | x | x |
| 12 | 60-200 mg/ml |  | x | x | x |

No.

FOR THE SOURCECF DEFENDANTS

FOR THE SOURCECF DEFENDANTS

Chiron's Final Infringement Contentions as to 50mg/ml of Tobramycin

| Claim No | About - Concentration of Tobramycin | Direct Inf-Literal | Direct Inf-Doctrine of Equivalents | Inducement | Contributory |
|---|---|---|---|---|---|
| 1 | **60-200 mg/ml** | | | x | x |
| 2 | 60-200 mg/ml | | | x | x |
| 3 | 60-200 mg/ml | | | x | x |
| 7 | 60-200 mg/ml | | | x | x |
| 8 | 60-200 mg/ml | | | x | x |
| 10 | 60-200 mg/ml | | | x | x |
| 11 | 60-200 mg/ml | | | x | x |
| 12 | 60-200 mg/ml | | | x | x |

Chiron's Final Infringement Contentions as to 40mg/ml of Tobramycin

| Claim No | About - Concentration of Tobramycin | Direct Inf-Literal | Direct Inf-Doctrine of Equivalents | Inducement | Contributory |
|---|---|---|---|---|---|
| 1 | **60-200 mg/ml** | | | x | x |
| 2 | 60-200 mg/ml | | | x | x |
| 3 | 60-200 mg/ml | | | x | x |
| 7 | 60-200 mg/ml | | | x | x |
| 8 | 60-200 mg/ml | | | x | x |
| 10 | 60-200 mg/ml | | | x | x |
| 11 | 60-200 mg/ml | | | x | x |
| 12 | 60-200 mg/ml | | | x | x |