1  Gerald Sobel
   Benjamin Hsing (*Pro Hac Vice*)
2  Jeffrey Horowitz (*Pro Hac Vice*)
   Sumir Sennik (*Pro Hac Vice*)
3  KAYE SCHOLER LLP
   425 Park Avenue
4  New York, New York  10022-3598
   Telephone:  (212) 836-8000
5  Facsimile:  (212) 836-8686

6
   Mark D. Petersen (State Bar No. 111956)
7  Nan E. Joesten (State Bar No. 191288)
   Lucas Huizar (State Bar No. 227111)
8  FARELLA BRAUN & MARTEL LLP
   235 Montgomery Street, 30th Floor
9  San Francisco, CA  94104
   Telephone:  (415) 954-4400
10 Facsimile:  (415) 954-4480

11 Attorneys for Plaintiff
   CHIRON CORPORATION

12
                    UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14

15
   CHIRON CORPORATION,                    Case No.  C 05-01938 WHA
16
                    Plaintiff,            **PLAINTIFF'S [PROPOSED] FINDINGS
17                                        OF FACT AND CONCLUSIONS OF LAW**
           vs.
18                                        Dept.:     Courtroom 9, 19th Floor
   SOURCECF, INC.; SOURCECF
19 CLINICAL RESEARCH &                    Honorable William H. Alsup
   DEVELOPMENT, L.L.C.; MAXOR
20 NATIONAL PHARMACY SERVICES
   CORPORATION d/b/a IV SOLUTIONS;
21 FOUNDATION CARE L.L.C.; and
   PHARMACEUTICAL SPECIALTIES,
22 INC.,

23                  Defendants.

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938                                          19796\938076.3

Plaintiff Chiron Corporation "Chiron" hereby submits the following proposed Findings of Fact and Conclusions of Law with respect to Defendants Source CF, Inc. ("Source CF"), Source CF Clinical Research & Development ("Source CF CR&D"), and the Respiratory Disease Network ("RDN") pharmacy defendants Maxor National Pharmacy Services d/b/a IV Solutions ("IV Solutions or MAXOR"), Foundation Care LLC ("Foundation Care") and Pharmaceutical Specialties, Inc. ("PSI"), collectively "Defendants."

## I.   PROPOSED FINDINGS OF FACT

### 1.   The '907 Patent

1.1   U.S. Patent No. 6,890,907 ("the '907 patent") describes an attempt to improve upon TOBI®, the only FDA approved tobramycin solution for inhalation proven to be safe and effective through extensive human clinical testing.

Challoner at Trial Transcript ("RT") 38:23-39:2, 35:20-36:7, 62.9-62.19

1.2   The '907 patent cites TOBI®, described in U.S. Patent No. 5,508,269 ("the '269 patent), as prior art, and incorporates the '269 patent by reference in its entirety.  The '269 patent describes a method of treatment with a low efficiency nebulizer and high treatment times.

Trial Exhibit ("Tr. Ex.") 95 at column 3, lines 28-33
Challoner at RT 62:14-64:15

1.3   Scientists working at Chiron invented an inhalable tobramycin formulation for use with high efficiency nebulizers in order to develop a method of tobramycin treatment for cystic fibrosis patients that can deliver an equivalent TOBI pulmonary dose of medication to patients in a shorter period of time.

Challoner at RT 39:10-15

1.4   The PTO's reasons for allowance of the '907 patent state:  "[t]he novel features of the '907 patent reside in requiring 10 minutes or less for duration of nebulization, with an inhalation device having a rate of aerosol output of not less than 4 μl/sec that releases at least 75% of the loaded dose and that produced particle sizes of between about 1 μ to about 5 μ."

Challoner at RT 530:3-12

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

19796\938076.3

1.5     The PTO's reasons for allowance of the '907 patent further state:  "[t]he prior art record, which is U.S. Patent number 5,508,269, discloses delivery of less than 50% of the loaded dose and a negative teaching to not use vials of less than 5 ml.  Applicant's data in the specification supports the advantages of the problems over the prior art."

Challoner at RT 530:13-531:3

1.6     Not all methods of treatment that fall within the scope of the '907 patent are necessarily safe and effective from a regulatory standpoint.  It is necessary to undergo the FDA approval process and the required clinical studies to prove safety and efficacy before marketing or promoting the method of treatment disclosed in the '907 patent in a clinical setting.

Challoner at RT 555:4-556:11, 558:13-23

1.7     Defendants do not dispute the meaning of any phrase or claim terms in the '907 patent other than the term "about 60 to about 200 mg/ml."

Defendants' Resp. to Pltf's First Set of Request for Admissions:  Source CF CR&D at RT 238:21-239:5; SourceCF Inc. at RT 239:6-13; PSI at RT 243:24-244:7; Maxor at RT 248:20-249:3; Foundation Care at RT 252:22-253:5.

## 2.     Defendants' Infringing Formulations

2.1     When the RDN began filling prescriptions of tobramycin solution for use with the eFlow® nebulizer, all three RDN compounding pharmacies originally filled prescriptions for 100 mg/ml formulations of tobramycin solution.

Sledge at Tr. Ex. 205-A at 111:23-112:15
Schultz at Tr. Ex. 210-A at 127:5-11
Birdsong at Tr. Ex. 211-A at 54:25-55:5

2.2     SourceCF conceived of Defendants' original 100 mg/ml tobramycin formulation, "explain[ed] the rationale for this concentration" and provided the formulation to the RDN compounding pharmacies.  The formulation SourceCF provided to the RDN pharmacies is the same as its TOFIN formulation.

Tr. Ex. 4 at PS0042-43; Tr. Ex. 65 at SCF 1503
Sledge at RT 319:17-19; 320:25-322:13
Walters at Tr. Ex. 206-A at 136:24-138:24; RT 443:4-445:12
Tr. Ex. 7

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 2 -

19796\938076.3

2.3     Defendants admitted that their 100 mg/ml formulation of tobramycin solution for use with eFlow® falls within the injunction issued by the Court enjoining Defendants from making, using, selling or offering for sale any tobramycin solutions for use with eFlow® that meet every limitation of claim 1 of the '907 patent.

Sledge at Tr. Ex. 205-A at 170:6-10, 171:13-17

2.4     Foundation Care and IV Solutions changed their formulations of tobramycin solution for use with eFlow® and began filling prescriptions for 50 mg/ml formulations of tobramycin solution with the eFlow®.

Birdsong at Tr. Ex. 211-A at 101:18-21, 101:24-102:3; Tr. Ex. 39, 43, 44, 92
Schultz at Tr. Ex. 210-A at 214:12-15; Tr. Ex. 30, 20, 91

2.5     When Foundation Care and IV Solutions changed the concentration of their tobramycin formulations for use with the eFlow® to 50 mg/ml, they decreased the tobramycin concentration while increasing the volume fill, in order to maintain the same total doses as their original 100 mg/ml formulations.

Birdsong at Tr. Ex. 211-A at 107:6-108:15; Tr. Ex. 45
Schultz at Tr. Ex. 210-A at 219:2-14; Tr. Ex. 30

2.6     PSI changed its formulations of tobramycin solution for use with eFlow and began filling prescriptions for 40 mg/ml formulations of tobramycin solution for use with eFlow®.

Sledge at Tr. Ex. 205-A at 173:18-20; Tr. Ex. 12, 82, 83.

2.7     When PSI changed its tobramycin formulations for use with the eFlow® to 40 mg/ml, it decreased the tobramycin concentration while increasing the volume fill, in order to maintain the same total dose as its original 100 mg/ml formulations.

Sledge at Tr. Ex. 205-A at 206:22-207:3

2.8     The RDN pharmacies maintained the same total dose when they changed their tobramycin formulations from100 mg/ml to 50 mg/ml and 40 mg/ml in order to maintain the same respirable dose.

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938
- 3 -
19796\938076.3

Birdsong at Tr. Ex. 211-A at 113:3-14
Sledge at Tr. Ex. 205-A at 207:11-18, 208:4-13
Schultz at Tr. Ex. 210-A at 207:22-208:10, 226:19-227:23
Tr. Ex. 72

2.9     Defendants' made insubstantial changes to the characteristics -- such as salinity, osmolality and pH -- of their tobramycin solutions for use with eFlow® when they changed their formulations from 100 mg/ml to 50 mg/ml and 40 mg/ml.  However, the 50 mg/ml and 40 mg/ml formulations are still "aqueous solutions" and are in "physiologically acceptable carrier[s]" as recited in claim 1 of the '907 patent.

Birdsong Tr. Ex. 211-A at 132:12-133:4
Sledge Tr. Ex. 205-A at 247:13-248:2
Schultz Tr. Ex. 210-A at 237:10-238:11, 251:15-18

## 3.     Person of Ordinary Skill in the Art

3.1     The art pertinent to the '907 patent is the art of aerosol science and aerosol delivery systems of inhaled medications.

Smaldone at RT 108:2-11

3.2     A person of ordinary skill in this art is a person with a professional degree in either pharmacy or formulation, so that they have experience in the formulation of drugs, or an M.D., such that they have professional training in respiratory physiology.  In addition, this person would have experience in both of these areas, as well as postdoctoral training.

Smaldone at RT 108:12-109:2

3.3     A pharmacist without a Ph.D. is not a person of ordinary skill in the art of aerosol science and aerosol delivery systems of pharmaceuticals.

Smaldone at RT 109:3-5

## 4.     Literal Infringement

4.1     The '907 patent expressly discloses that the concentration ("about 60 to about 200 mg/ml") and volume ("less than 4 ml") limitations are interrelated and must be viewed relative not only to each other but to the other claim limitations as well.

'907 patent:  Tr. Ex. 95, col. 6, lines 25-30
Challoner at RT 53:11-54:10
Finlay at RT 167:13-17

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW                    - 4 -
CASE NO. C-05-01938

19796\938076.3

Smaldone at RT 109:22-110:15

4.2     Claim 1 recites a "dose" limitation that comprises both the volume and concentration limitations:  "a nebulized unit *dose of 4.0 ml or less* of an aqueous solution comprising from about *60 to about 200 mg/ml* of tobramycin."  (Emphasis added.)

'907 patent:  Tr. Ex. 95, col. 63, lines 25-27

4.3     In evaluating the appropriate scope of "about," the technology of the '907 patent compels that the dose contemplated by the invention, including the resultant respirable dose and air surface liquid ("ASL") concentration in the endobrochial region, must be considered.

Smaldone at RT 109:22-110:15
Finlay at RT 167:1-17, 118:22-25, 171:7-13

4.4     All of Defendants' 50 mg/ml formulations of tobramycin solution for use with eFlow® are directly covered by the "about 60 to about 200 mg/ml" limitation in claim 1 of the '907 patent.  For instance, the percent difference in ASL concentration between the 50 mg/ml and the 60 mg/ml formulations is about 1% or less.

Finlay at RT 202:24-203:12
Smaldone at RT 122:13-123:10

## 5.     Doctrine of Equivalents

5.1     Defendants' 50 mg/ml and 40 mg/ml formulations of tobramycin solutions for use with the eFlow® are equivalent to their admittedly infringing 100 mg/ml formulations, which falls within the scope of at least claim 1 of the '907 patent.

Birdsong at Tr. Ex. 211-A at 106:13-16, 106:18-108:15
,Schultz at Tr. Ex. 210-A at 216:11-22, 217:17-220:16
Sledge at Tr. Ex. 205A at 207:11-208:1, 208:4-13
Walters at Tr. Ex. 206-A at 211:19-214:14, 221:20-223:13
Tr. Ex. 32, 45, 72

5.2     In the context of medications inhaled through nebulizers, the total amount of medication loaded into the nebulizer is often referred to as the "loaded dose."  The loaded dose (D) of a medication is equal to the concentration (C) of the medication solution multiplied by the volume (V) of the solution placed into the nebulizer (i.e. $D = C \times V$).

Finlay at RT 167:1-17, 180:21-181:2

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW              - 5 -
CASE NO. C-05-01938

19796\938076.3

Smaldone at RT 111:24-112:7

5.3     The tobramycin dose loaded in the nebulizer is an important factor in determining how much medication will be delivered to the mouth of the patient.  Only a fraction of the loaded dose deposits in the endobronchial regions of the lung to treat the microbial infection.

Finlay at RT 171:25-172:23, 181:17-182:7

5.4     Defendants' 40 mg/ml and 50 mg/ml tobramycin formulations contain a total dose of tobramycin within the unit dose range contemplated in claim 1 of the '907 patent.

Smaldone at RT 112:8-119:18
Tr. Ex. 105.

5.5     The loaded doses of Defendants' 40 mg/ml and 50 mg/ml tobramycin formulations are the same as the loaded doses of Defendants' 100 mg/ml tobramycin formulation.

Sledge at Tr. Ex. 205-A at RT 206:22-207:3
Downing at Tr. Ex. 213-A at RT 77:7-11
Schultz at Tr. Ex. 210-A at RT 219:2-14

5.6     "Respirable dose," also known to those skilled in the art as the "respirable fraction," is the percentage of aerosolized particles with an aerodynamic diameter below 5μm. Respirable dose is an indicator of the amount of tobramycin that may potentially reach the endobronchial region of a patient.

Smaldone at RT 120:4-23.
Sledge at Tr. Ex. 205-A at 97:2-8, 98:18-99:7

5.7     A comparison of the respirable dose of formulations described in the '907 patent administered using the Aerodose nebulizers, and Defendants' 50 mg/ml and 40 mg/ml formulations of tobramycin solution for use with the eFlow® nebulizer, demonstrates that Defendants' 50 mg/ml and 40 mg/ml formulations all result in respirable doses which fall within the range of respirable doses achieved by using the formulations set forth in claim 1 of the '907 patent.

Smaldone at RT 120:24 - 122:10.

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW                          - 6 -
CASE NO. C-05-01938

19796\938076.3

1      5.8     One method of comparing different concentrations of inhaled aerosol tobramycin

2  solution is by calculating the airway surface liquid ("ASL") concentration of the delivered

3  tobramycin.  ASL concentration is the concentration of tobramycin found in the mucous liquid

4  lining the endobronchial airways of the lung.

5              Finlay at RT 171:7-13; 171:25:172:23

6      5.9     The percentage difference in estimated ASL concentrations between inhaled 40

7  mg/ml and 60 mg/ml tobramycin solutions, at a total dose of 150 mg, delivered via a high

8  efficiency nebulizer with an estimated endobronchial efficiency of 7.5%, is approximately 0.9%.

9              Finlay at RT 188:22-189:19; Tr. Ex. 209

10     5.10    The percentage difference in estimated ASL concentrations between inhaled 50

11  mg/ml and 60 mg/ml tobramycin solutions, at a total dose of 150 mg, delivered via a high

12  efficiency nebulizer with an estimated endobronchial efficiency of 7.5%, is approximately 0.4%.

13             Finlay at RT 189:20-190:6; Tr. Ex. 209

14     5.11    The estimated ASL concentration of inhaled aerosol formulations containing a

15  total dose of 150 mg in either 40 mg/ml or 50 mg/ml concentrations is substantially the same as

16  the estimated ASL concentration of an inhaled aerosol formulation containing a total dose of

17  150 mg at a 60 mg/ml concentration, where the formulations are delivered as an inhaled aerosol

18  via a high efficiency nebulizer with an estimated endobronchial efficiency of 7.5%.

19             Finlay at RT 203:21-204:6; Tr. Ex. 209

20     5.12    All of Defendants' 50 mg/ml and 40 mg/ml formulations of tobramycin solution

21  are not substantially different than, and are interchangeable with, the "about 60 to about 200

22  mg/ml" formulation of tobramycin solution as set forth in claim 1 of the '907 patent.

23             Smaldone at RT 123:11-124:3,124:4-16.
              Finlay at RT 203:13-204:6

24

25     5.13    Defendants' 50 mg/ml and 40 mg/ml formulations serve substantially the same

26  function as the "about 60 to about 200 mg/ml" formulation.  All function as aqueous solutions

27  which are aerosolized in a nebulizer.

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW                   - 7 -
CASE NO. C-05-01938                                           19796\938076.3

Smaldone at RT 124:17-22
Finlay at RT 204:7-13

5.14    Defendants' 50 mg/ml and 40 mg/ml formulations perform that function in substantially the same way as the "about 60 to about 200 mg/ml" formulation by creating a respirable fraction of droplets.

Smaldone at RT 124:23-125:5
Finlay at RT 204:14-20

5.15    Defendants' formulations are intended to deliver the same respirable dose to the patient as the methodology of claim 1 of the '907 patent.

Smaldone at RT 118:1-25.
Sledge at Tr. Ex. 205-A at 130:9-15, 133:2-17
Tr. Ex. 6, PS00176

5.16    Defendants' 50 mg/ml and 40 mg/ml formulations are intended to achieve substantially the same result as the "about 60 to about 200 mg/ml" formulation.  All are intended to treat endobronchial infections in cystic fibrosis patients by delivering the same dose of drug to the airways of patients as the doses described in claim 1 of the '907 patent.

Finlay at RT 204:21-205:18
Smaldone at RT 125:6-20

## 6.    The '269 Patent (Prior Art)

6.1    The '269 patent, which was filed in 1994, is a prior art reference that discloses and claims an invention that is different from the invention claimed in the '907 patent.  The '269 patent claims a method of treating endobronchial infections using inhaled aminoglycoside (a class of compounds that includes tobramycin) solutions of about 5 ml in older and less efficient nebulizers.

Challoner RT at 87:15-20.

6.2    To the extent the '269 patent discusses appropriate doses or concentrations of tobramycin solutions, it does so in the context of that earlier technology, i.e., methods of treating lung infections using solutions of greater volume with low efficiency nebulizers. To the extent

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 8 -

19796\938076.3

1    that the '269 suggests that concentrations below 60 mg/ml are not desirable, such a suggestion is

2    applicable only to the prior art methodology and simply does not apply to the accused

3    tobramycin solutions with the high efficiency eFlow nebulizer.

4           Challoner RT at 67:1-11.

5           6.3    The '269 reference to "minimal yet efficacious amount" refers to the amount of

6    tobramycin in the prior art formulation (300 mg) in the prior art formulation used with a low

7    efficiency nebulizer and does not refer to the corresponding concentration of 60 mg/ml.

8           Challonner RT at 64:19-65:3, 65:15-16, 66:6-13.

9           6.4    The language of the '269 patent explicitly states that "[a]lthough in some

10   instances both lower or higher doses, typically from 40-80 mg/ml may be advantageously used,

11   the 60 mg/ml dose of tobramycin is preferred."  The '269 patent also claims tobramycin

12   concentrations as low as 40 mg/ml.

13          Challoner at RT 67:12-68:15, 70:23-71:15

14   **7.    <u>Inducement</u>**

15          7.1    IV Solutions and Foundation Care directly instruct patients how to administer

16   their compounded 50 mg/ml tobramycin formulations for use with the eFlow®.

17          Birdsong at Tr. Ex. 211-A at 104:20-105:14
             Schultz at Tr. Ex. 210-A at 113:10-115:19; 120:5-19
18          Tr. Ex. 24

19          7.2    PSI directly instructs patients how to administer its compounded 40 mg/ml

20   tobramycin formulations for use with the eFlow®.

21          Sledge at Tr. Ex. 205-A at 180:19-181:5; 227:8-15; 230:2-5

22          7.3    SourceCF directly markets the eFlow® nebulizer to doctors and cystic fibrosis

23   centers for use in conjunction with Defendants' 50 mg/ml and 40 mg/ml formulations of

24   tobramycin solution.

25          Downing at Tr. Ex. 213-A at 29:17-30:24
             Sledge at Tr. Ex. 205-A at 155:9-18, 151:21-152:24
26          Walters at Tr. Ex. 206-A at 134:14-135:17
             Tr. Ex. 68 at SCF002786

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 9 -

19796\938076.3

1      7.4    To support the compounded 100 mg/ml formulation of tobramycin solution for

2  use with eFlow®, Defendants relied upon *in vitro* laboratory studies paid for by SourceCF and

3  performed by PARI, the company that manufactures the eFlow®.  SourceCF provided these

4  studies to the RDN for the purpose of having the RDN give the studies to doctors in order to

5  persuade doctors to prescribe tobramycin solution for use with eFlow®.

6

> Walters Tr. Ex. 206-A at 132:9-133:2, 136:24-138:24, 206:22-207:1
> Schultz Tr. Ex. 210-A at 163:2-164:9

7

> Sledge Tr. Ex. 205-A at 145:19-146:13
> Downing Tr. Ex. 213-A at 35:23-37:17

8

9      7.5    The PARI *in vitro* studies are designed to show that a 100 mg/ml formulation of

10  tobramycin solution when used with the eFlow® generates a comparable respirable dose to the

11  standard FDA approved TOBI® dose.

12

> Walters Tr. Ex. 206-A at 133:3-21
> Tr. Ex. 7

13

> Tr. Ex. 8

14      7.6    Defendants provide the PARI *in vitro* studies to the cystic fibrosis community, in

15  particular medical personnel, in an effort to convince doctors to prescribe their tobramycin

16  solution for use with eFlow®, even after changing from 100 mg/ml to 50 mg/ml and 40 mg/ml.

17

> Sledge at Tr. Ex. 205-A at 155:9-18, 142:24-145:4, 145:19-146:13
> Walters at Tr. Ex. 206-A at 136:24-138:5

18

> Schultz at Tr. Ex. 210-A at 160:25-162:12, 170:14-25, 204:21-205:10
> Downing at Tr. Ex. 213-A at 34:1-17, 88:2-89:8

19

> Tr. Ex 47

20

21      7.7    When Defendants changed their compounded tobramycin formulations to

22  concentrations of 50 mg/ml and 40 mg/ml, Defendants recognized that they needed to maintain

the same total dose in order to achieve the same respirable dose as their 100 mg/ml formulations.

23

> Schultz at Tr. Ex. 210-A at 207:1-208:25
> Birdsong at Tr. Ex. 211-A at 112:23-113:14

24

> Sledge at Tr. Ex. 205-A at 207:11-18, 208:4-13

25

26      7.8    SourceCF commissioned and financed new *in vitro* analytical testing of their 50

27  mg/ml and 40 mg/ml tobramycin formulations which Defendants intend to use to demonstrate an

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 10 -

19796\938076.3

1    equivalent respirable dose to doctors to encourage them to prescribe Defendants' tobramycin

2    solutions for use with eFlow®.

3            Schultz at Tr. Ex. 210-A at 220:20-221:5
             Downing at Tr. Ex. 213-A at 88:2-89:8, 91:25-93:1
4            Sledge at Tr. Ex. 205-A at 210:11-15
             Walters at Tr. Ex. 210-A at 210:19-211:11, 213:4-25
5            Tr. Ex. 72

6        7.9      The purpose of these new *in vitro* studies is to show that Defendants' 50 mg/ml

7    and 40 mg/ml formulations when used with the eFlow® will generate a respirable dose of

8    tobramycin comparable to the original infringing 100 mg/ml formulations, and to Chiron's

9    FDA-approved TOBI®.

10           Downing at Tr. Ex. 213-A at 91:25-92:15, 92:21-93:1
             Walters at Tr. Ex. 206-A at RT 213:4-25
11

12       7.10     Defendants have established various means of promoting their tobramycin

13   solutions for use with eFlow® to doctors, patients, cystic fibrosis centers, and other interested

14   parties, including websites, email protocol, form letters, press releases, attendance at NACF

15   meetings, and telephone hotlines.

16           Sledge at Tr. Ex. 205-A at 129:2-15, 227:12-15, 230:2-5
             Schultz at Tr. Ex. 210-A at 113:22-115:19
17           Downing at Tr. Ex. 213-A at 29:17-24
             Sledge at Tr. Ex. 205-A at 152:10-24
18

19       7.11     When used with the eFlow®, a 50 mg/ml concentration of tobramycin solution in

20   a 3 ml volume (150 mg total dose) will produce substantially the same respirable dose as a 100

21   mg/ml concentration of tobramycin solution in a 1.5 ml volume (150 mg total dose).

22           Birdsong 112:21-114:1, 117:12-24

23       7.12     When used with the eFlow®, a 40 mg/ml concentration of tobramycin solution in

24   a 3.75 ml volume (150 mg total dose) will produce substantially the same respirable dose as a

25   100 mg/ml concentration of tobramycin solution in a 1.5 ml volume (150 mg total dose).

26           Sledge at Tr. Ex. 205-A at 207:11-18, 211:15-212:1

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938                          - 11 -                          19796\938076.3

7.13    Defendants provide suggested total doses and volumes that correspond to the 50 mg/ml and 40 mg/ml to doctors who are considering prescribing tobramycin solution for use with eFlow®.

> Sledge at Tr. Ex. 205-A at 181:6-182:23, 183:24-184:3
> Schultz at Tr. Ex. 210-A at 182:23-184:22
> Birdsong at Tr. Ex. 211-A at 95:14-96:6, 96:21-24

7.14    When Defendants changed their tobramycin solutions for use with the eFlow® from 100 mg/ml to 50 mg/ml and 40 mg/ml, all three RDN compounding pharmacies prepared and gave doctors pre-printed prescription forms allowing doctors to maintain their patients on the same total dose of medication but at the new concentrations.

> Birdsong at Tr. Ex. 211-A at 95:14-96:6, 96:21-24
> Sledge at Tr. Ex. 205-A at 181:6-182:23
> Schultz at Tr. Ex. 210-A at 185:15-186:20

7.15    The pre-printed prescription forms allow doctors to switch current 100 mg/ml patients to the new 50 mg/ml or 40 mg/ml formulation without changing the total medication dose simply by placing a check on a line next to the indicated tobramycin formulation, which includes concentration, volume and total dose.

> Birdsong at Tr. Ex. 211-A at 97:14-98:10, 98:21-24
> Sledge at Tr. Ex. 205-A at 183:15-184:3
> Schultz at Tr. Ex. 210-A at 187:8-188:6, 210:8-16

7.16    Defendants also sent letters to patients advising patients that they were going to receive new formulations of tobramycin solution for use with their eFlow® at a new concentration of either 50 mg/ml or 40 mg/ml, but that the total dose of their medication would remain the same.

> Schultz at Tr. Ex. 210-A at 217:17-219:14; 220:5-14
> Tr. Ex. 15, 32, 45

7.17    Doctors prescribed Defendants' 40mg/ml and 50 mg/ml formulations to their patients for use with the eFlow®.

> Tr. Ex. 30, 42

## 8.    Contributory Infringement

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 12 -

19796\938076.3

8.1     Defendants' tobramycin formulations are compounded exclusively for use with the eFlow® nebulizers; accordingly, the Defendants' formulations have no substantial non-infringing use.

> Birdsong at RT 521:16-23
> Schultz at RT 363:8-20

8.2     A patient who wishes to use tobramycin solution with eFlow® for the treatment of endobronchial infection may only do so by filling his or her prescription with one of the Defendant compounding pharmacies.

> Schultz at Tr. Ex. 210-A at 113:10-21
> Schultz at Tr. Ex. 210-A at 50:11-51:4, 51:16-22
> Tr. Ex. 22
> Walters Tr. Ex. 206-A at 255:11-256:2

8.3     Defendants learned of the existence of the '907 patent at or near the time the patent issued on May 10, 2005.

> Birdsong at Tr. Ex. 211-A at 71:24-72:6
> Walters at Tr. Ex. 206-A at 168:10-17
> Schultz at Tr. Ex. 210-A at 173:21-174:4
> Sledge at Tr. Ex. 205-A at 165:7-14

8.4     Defendants' tobramycin solution is a material component of the claimed invention and Defendants sold or supplied that component.

> Tr. Ex. 95
> Birdsong at Tr. Ex. 211-A at 101:18-21, 101:24-102:3; Tr. Ex.44, 43, 39, 92.
> Schultz at Tr. Ex. 210-A at 214:12-15; Tr. Ex. 30, 20, 91
> Sledge at Tr. Ex. 205-A at 173:18-20; Trial Exhibit 12, 82, 83

## 9.     <u>Direct Infringement by the Compounding Pharmacies</u>

9.1     The RDN pharmacies formulate 50 mg/ml or 40 mg/ml tobramycin solutions for each individual patient who receives a prescription for tobramycin solution for use with eFlow® nebulizers.

> Sledge at Tr. Ex. 205-A at 173:18-20, 178:6-11
> Schultz at Tr. Ex. 210-A at 214:12-15
> Birdsong at Tr. Ex. 211-A at 70:7-11, 71:8-14.  See also Tr. Ex. 39.

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 13 -

19796\938076.3

9.2     The RDN pharmacies teach patients how to use eFlow® nebulizers in order to administer Defendants' tobramycin formulations for the treatment of endobronchial infections.

> Birdsong at Tr. Ex. 211-A at 104:20-105:14
> Downing at Tr. Ex. 213-A at 41:12-43:7
> Sledge at Tr. Ex. 205-A 180:19-181:5, 220:10-14, 220:17-221:1, 229:5-230:5, 227:8-15
> Schultz at Tr. Ex. 210-A at 215:8-19, 113:10-115:19, 120:5-19

9.3     The RDN pharmacies directly provide support and education to patients regarding the administration of Defendants' tobramycin solutions for use with eFlow® for the treatment of endobronchial infections.

> Sledge at Tr. Ex. 205-A at 180:19-181:5, 220:10-14, 220:17-221:1, 227:8-15, 229:5-230:5
> Schultz at Tr. Ex. 210-A at 215:8-19, 113:10-115:19, 120:5-19
> Downing at Tr. Ex. 213-A at 29:17-30:14

9.4     The RDN pharmacies work in conjunction with cystic fibrosis treatment centers to assist in the treatment of CF patients by promoting and explaining the use of Defendants' tobramycin formulations for use with eFlow®.

> Sledge at Tr. Ex. 205-A  151:21-152:24
> Downing at Tr. Ex. 213-A at 29:17-30:14, 57:9-58:17
> Schultz at Tr. Ex. 210-A at 119:3-5, 9-23

9.5     The RDN pharmacies  work directly with physicians to promote and explain the administration of Defendants' tobramycin solutions for use with eFlow® for the treatment of endobronchial infections.

> Sledge at Tr. Ex. 205-A at 180:19-181:5, 220:10-14, 220:17-221:1
> Schultz at Tr. Ex. 210-A at 167:6-8, 167:12-15, 167:20-168:11
> Downing at Tr. Ex. 213-A at 36:7-19

9.6     The RDN pharmacies provide both the eFlow® and their 40 mg/ml and 50 mg/ml tobramycin formulations to patients suffering from endobronchial infections.

> Sledge at Tr. Ex. 205-A at 173:18-20, 219:2-11
> Schultz at Tr. Ex. 210-A at 214:12-15, 226:9-18
> Downing at Tr. Ex. 213-A at 36:7-19
> Birdsong at Tr. Ex. 211-A at 58:3-8, 133:14-22, 140:19-21
> Tr. Ex. 14, 82, 91, 92

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 14 -

19796\938076.3

**10.     Willful Infringement**

10.1     After the RDN pharmacies became aware of the issuance of the '907 patent, two of the pharmacies -- Foundation Care and IV Solutions -- continued to fill prescriptions at 100 mg/ml after the '907 patent issued.

> Schultz at Tr. Ex. 210-A at 177:18-24
> Birdsong at Tr. Ex. 211-A 71:8-14.
> Tr. Ex. 39.

10.1     SourceCF submitted three clinical studies attached to its application for an ANDA Suitability Petition for TOFIN.  These three studies are the three examples cited in the '907 patent specification, and are copies taken from the international patent application that was the counterpart to the United States patent application that eventually issued as the '907 patent.

> Walters at Tr. Ex. 206-A at 155:16-156:3; 156:5-158:15
> Challoner RT at 560:7-23
> '907 patent:  Tr. Ex. 95 at col. 8, line 55 – col. 63, line 16.
> Tr. Ex. 17

10.2     Even before the Court entered a permanent injunction covering Defendants' 100 mg/ml tobramycin formulations, IV Solutions began to fill prescriptions for tobramycin solution at 50 mg/ml in October 2005 before receiving the opinion letter from counsel.

> Birdsong at Tr. Ex. 211-A at 71:8-14; See also Tr. Ex. 39.

10.3     Defendants interchanged the infringing 100 mg/ml tobramycin formulations of patients who were already receiving their tobramycin solution via eFlow® with 50 mg/ml or 40 mg/ml tobramycin solutions at the same total dose of tobramycin for treatment of their endobronchial infections.

> Birdsong at Tr. Ex. 211-A at 95:14-96:6, 96:21-24
> Sledge at Tr. Ex. 205-A at 181:6-182:23
> Schultz at Tr. Ex. 210-A at 185:15-186:20

10.4     SourceCF did not seek an infringement opinion regarding Defendants' 40 mg/ml and 50 mg/ml solutions from T. Gregory Peterson at Bradley Arant LLP until sometime in December 2005.

> Peterson at Tr. Ex. 221-A at 33:1-13

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 15 -

19796\938076.3

1      10.5     The opinion letter is dated January 23, 2006, and none of the Defendants received

2      the opinion letter until on or after January 23, 2006.

3                          Walters at Tr. Ex. 206-A at 224:9-20, 225:12-15

4      10.6     Mr. Peterson is not an expert in aerosolized antibiotics or their delivery methods.

5                          Peterson at Tr. Ex. 221-A, at 78:15-18

6      10.7     Mr. Peterson did not consult with anyone of ordinary skill in the art before or

7      during the preparation of his infringement opinion.

8                          Peterson at Tr. Ex. 221-A 48:5-49:24, 72:22-73:6

9      10.8     Mr. Peterson did not consult with any technical experts regarding the '907 patent

10     while preparing his infringement opinion.

11                         Peterson at Tr. Ex. 221-A 49:25-50:5; 61:3-6, 71:12-15, 78:19-79:1

12     10.9     Mr. Peterson's opinion letter itself states that he consulted only with Mike

13     Walters in preparing his opinion.  Mike Walters testified that he is not a person of ordinary skill

14     in the art of formulating tobramycin solutions for inhalation.
                           Peterson at Tr. Ex. 73, p. 3
15                         Walters at Tr, Ex, 206-A at 188:1-20

16     10.10   Mr. Peterson did not review the actual formulation documents in preparing his

17     opinion.  Defendants did not provide him with any such documents.

18                         Peterson Tr. Ex. 221-A, 51:15-19, 51:23-52:12

19                         **II.      PROPOSED CONCLUSIONS OF LAW**

20     **1.      Infringement.**

21     1.1      <u>Use of Defendants' 50 mg/ml formulation of tobramycin solution with the eFlow®</u>

22     <u>nebulizer literally infringes claims 1, 2, 3, 7 and 8 of the '907 patent.</u>

23            The Court has construed the "about 60 mg/ml to 200 mg/ml" limitation in Claim 1 of the

24     '907 patent to mean "*approximately* 60 mg/ml to *approximately* 200 mg/ml."  (Order Granting

25     Permanent Injunction, December 1, 2005, at 5.)  To determine whether Defendants' 50 mg/ml

26     formulation falls within the literal scope of this limitation, the Court must look at the underlying

27     technology of the invention.  *See Modine Mfg. Co. v. U.S. International Trade Comm'n.*, 75 F.3d

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA 94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938                                  - 16 -                          19796\938076.3

1545, 1554 (Fed. Cir. 1996) ("When the claims are applied to an accused device, it is a question of *technologic fact* whether the accused device meets a reasonable meaning of 'about' in the particular circumstances.") (emphasis added).

In addition, the "about 60 mg/ml to 200 mg/ml" limitation cannot be viewed in isolation. Other limitations must also be considered.  *See Housey Pharms., Inc. v. Astrazeneca UK Ltd.*, 366 F.3d 1348, 1352 (Fed. Cir. 2004) (stating that "a claim must also be considered in the context of the intrinsic evidence, namely the claims, the specification, and the prosecution history"); *Abbott Labs v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1351 (Fed. Cir. 2003) ("The usage of the disputed claim terms in the context of the claims as a whole also informs the proper construction of the terms.").  Accordingly, Defendants' use of the 50 mg/ml tobramycin formulation with the eFlow® literally meets the "about 60 to about 200 mg/ml" limitation.

**Proposed Facts**:  **1.7, 2.4, 2.5, 2.8, 3.1, 3.2, 3.3, 4.1, 4.2, 4.3, 4.4**

> 1.2    <u>Use of Defendants' 50 mg/ml formulation of tobramycin solution with the eFlow® nebulizer infringes claims 1, 2, 3, 7 and 8 of the '907 patent under the doctrine of equivalents.</u>

The doctrine of equivalents guards patentees against the application of strict literalism in determining infringement, and "prevents an accused infringer from avoiding liability for infringement by changing only minor or insubstantial details of a claimed invention while retaining the invention's essential identity." *Festo Corp. v. Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 564 (Fed. Cir. 2000).

A claim element is equivalently present in an accused process if "insubstantial differences" distinguish the missing claim element from the corresponding features in the accused process. *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1359 (Fed. Cir. 2002). This test is determined from the viewpoint of one having ordinary skill in the art. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997).  Lack of known interchangeability between two elements is an important factor in determining whether the elements are insubstantially different. *Warner-Jenkinson Co*, 520 U.S. at 36; *see also Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1374 (Fed. Cir. 2002).  "[T]he known

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 17 -

19796\938076.3

1  interchangeability test looks to the knowledge of a skilled artisan to see whether that artisan

2  would contemplate the interchange as a *design choice*." *Interactive Pictures Corp. v. Infinite*

3  *Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001) (emphasis added).  Accordingly, expert

4  testimony is highly probative to prove equivalence.  Courts have also applied the triple identity

5  test:  if a feature in the accused process performs substantially the same function, in substantially

6  the same way, to achieve substantially the same result, as the claimed element, then they are

7  equivalent.  *Toro Co. v. White Consolidated Indus., Inc.*, 266 F.3d 1367, 1370 (Fed. Cir. 2001).

8          Defendants' 50 mg/ml and 40 mg/ml tobramycin solutions are interchangeable with, and

9  equivalent to, the claimed "about 60 to about 200 mg/ml" solution.  *See Warner-Jenkinson,* 520

10  U.S. at 36.  Defendants' 50 mg/ml and 40 mg/ml formulations also perform substantially the

11  same function, in substantially the same way, to achieve substantially the same result, as the

12  claimed "about 60 to about 200 mg/ml" formulation, and therefore infringe Claim 1 of the '907

13  patent under the doctrine of equivalents.

14          **Proposed Facts:  1.7, 2.4, 2.5, 2.6, 2.7, 2.9, 3.1, 3.2, 3.3, 5.1, 5.2, 5.3. 5.4. 5.5, 5.6, 5.7,**

15  **5.8, 5.9, 5.10, 5.11, 5.12, 5.13, 5.14, 5.15, 5.16**

16          1.3      The All Limitations Rule Does Not Bar Equivalence.

17          In determining equivalence, each limitation must be analyzed in view of the entire claim:

18          An analysis of the role played by each element *in the context of the specific*
        *patent claim* will thus inform the inquiry as to whether a substitute element
19          matches the function, way, and result of the claimed element, or whether
        the substitute element plays a role substantially different from the claimed
20          element.

21  *Warner-Jenkinson*, 520 U.S. at 40 (emphasis added).

22          The "all limitations rule provides that the doctrine of equivalents does not apply if

23  applying the doctrine would vitiate an entire claim limitation."  *Pfizer, Inc. v. Teva Pharms. USA,*

24  *Inc.*, 429 F.3d 1364, 1379 (Fed. Cir. 2005).  Chiron's equivalence case vitiates no claim limitation

25  where the "about 60 to about 200 mg/ml" limitation is equivalently met by Defendants' 50 mg/ml

26  and 40 mg/ml solutions.  This is consistent with the Federal Circuit's ruling in *Hilton Davis*

27  *Chem. Co. v. Warner-Jenkinson Co.*, 114 F.3d 1161, 1164 (Fed. Cir. 1997) (finding that the

28  limitation of "from approximately 6.0 to 9.0" pH was equivalently met by a pH of 5.0).

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW                - 18 -                    19796\938076.3
CASE NO. C-05-01938

1    **Proposed Facts:  4.1, 4.2, 4.3, 5.2, 5.3, 5.4, 5.5**

2       1.4    <u>Statements in the '269 Patent Did Not Disavow Equivalent Subject Matter</u>.

3       To the extent that a patentee may be precluded from invoking the doctrine of equivalents

4    to recapture subject matter disclaimed in the patent specification, the patent specification must

5    have "specifically identified, criticized, and disclaimed" the equivalent subject matter.  *See, e.g.,*

6    *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1345 (Fed. Cir.

7    2001); *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1342 (Fed. Cir. 2004) (only a "clear

8    disavowal" of subject matter precludes application of doctrine of equivalents to recapture that

9    subject matter).

10      Chiron is not aware of any case holding or suggesting that statements made in a patent

11   incorporated by reference can constitute a disclaimer, and statements made in a prior art patent

12   incorporated by reference cannot rise to the level of a specific identification, criticism, and

13   disclaimer required to establish a clear disavowal of equivalent subject matter.  *See SciMed*, 242

14   F.3d at 1345.  Statements made in the '269 patent do not constitute a specific identification,

15   criticism, and disclaimer that is necessary to establish a clear disavowal of equivalent subject

16   matter.  *Id.*  Likewise, statements critiquing the prior art in the context of a later patent are not

17   sufficient to clearly disavow those claims in the later patent.  *Micro Chemical v. Great Plains*

18   *Chemical Co.*, 194 F.3d 1250, 1260 (Fed. Cir. 1999).

19      In *Micro Chemical* the Federal Circuit ruled that inclusion of a prior art reference that

20   contained certain limitations could not be a disclaimer for purposes of the later patent:

21          [T]he district court read the patentee's statements about the Brewster prior
           art as a clear disavowal of the weigh dump method.  To the contrary,
22          although the applicant noted certain inefficiencies in the Brewster system,
           the patent never clearly disavows the weigh dump method as being
23          incapable of performing the claimed functions.  The statements relied on
           by the district court in both the background section and the prosecution
24          history were directed to a particular prior art device, the Brewster machine,
           not to the weigh dump method in general.
25
                                    * * *
26
           The prosecution history also does not disavow the weigh dump method.
27          The prosecution history merely described the Brewster system to facilitate
           a comparison by the patent examiner.
28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW                         - 19 -                        19796\938076.3
CASE NO. C-05-01938

Any supposed disclaimer made in the '269 patent has to do with the prior art technology of the '269 patent and has nothing to do with the accused embodiment that Chiron seeks to prove as within the equivalent scope of the claims of the patent in suit.

**Proposed Facts:  6.1, 6.2, 6.3, 6.4**

1.5     <u>Prior Art Does Not Limit Chiron's Asserted Scope of Equivalents</u>.

"[T]the fact that a patent is an improvement patent does not automatically preclude application of the doctrine of equivalents.  'That a claim describing a limited improvement in a crowded field will have a limited range of permissible equivalents does not negate the availability of the doctrine [of equivalents] vel non.'" *Abbott Labs. v. Dey L.P.*, 287 F.3d 1097, 1097 (Fed. Cir. 2002) (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 27 n. 4 (1997)).

> To determine the scope of the doctrine of equivalents in light of the prior art, a court can consider a 'hypothetical claim' that literally recites the range of equivalents asserted to infringe.  'The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art.' *Id*. at 1105 (internal citations omitted).

* * *

> [I]n order for this hypothetical claim to be anticipated, 'a single, prior art document [must] describe *every element* of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.  Likewise, to make the hypothetical claim obvious, the court must find that 'the differences between the subject matter sought to be patented [i.e., the hypothetical claim] and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.' *Id*. at 1105-06 (emphasis in original, internal citations omitted).

In conducting this hypothetical claim analysis, it is improper to compare only a single limitation of claim 1 to the prior art patent, while ignoring other limitations of the claim. *Id*. at 1106.  Thus, even though a prior art patent at issue in *Abbott* described a range that overlapped with the hypothetical claimed range (75.0-95.5 vs. 68.6-94.5), the Federal Circuit held that the district court erroneously "concluded that the asserted range of equivalents was too broad because it encompassed the prior art" since the prior art patent failed to disclose the other claim limitations. *Id*. at 1105-6.

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 20 -

19796\938076.3

It is also improper to focus on possible outer ranges beyond the scope of the asserted equivalent range. *Abbott* states that since the patentee "only asserts an upper [equivalent] limit of 94.5%, [a]n examination of what happens in the extreme outer ranges of phospholipid content is therefore irrelevant to the scope of equivalents asserted by [the patentee]." *Id.* at 1107. There is no prior art of record that either anticipates or renders obvious a hypothetical claim covering Chiron's asserted range of equivalents (40 - about 200 mg/ml),

The only prior art of record is the '269 patent, which does not anticipate nor render obvious a hypothetical claim encompassing the asserted range of equivalents. Indeed, in the Examiner's Reasons for Allowance, the examiner does not say that the novel features of the invention reside in the claimed concentration range. Rather, the examiner stated

> [t]he novel features of this invention reside in requiring 10 minutes or less for duration of nebulization, with an inhalation device having a rate of aerosol output of not less than 4 ml/sec that releases at least about 75% of the loaded dose and that produces particle sizes of between about 1 microns to about 5 microns. The prior art of record, which is U.S. Patent number 5,508,269, discloses delivery of less than 50% of the loaded dose and a negative teaching to not use vials of less than 5 ml. Applicant's [sic] data in the specification supports [sic] the advantages of the problems over the prior art. Additionally, the instant invention solves the prior art problem of toxicity and stability. Such novel features are neither taught nor anticipated by the prior art.

(Tr. Ex. 96 at C-000141.)

It is clear that the examiner would have allowed a hypothetical claim of 40 mg/ml over the '269 patent and Chiron is accordingly entitled to have a range of equivalents that includes 40 mg/ml.

**Proposed Facts**:  **1.2, 1.3, 1.4, 1.5, 1.6, 6.1, 6.2, 6.3, 6.4**

**2.    Inducement.  Defendants Induce Infringement of Claims 1, 2, 3, 7 and 8 of the '907 Patent.**

"Proof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding inducement." *Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed. Cir. 1990). "To establish inducement based on the sale of a product with substantial non-infringing use, patentee needs to establish that 'in addition to the sale of that

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 21 -

19796\938076.3

1    product, active steps are taken to encourage direct infringement.'" *Dynacore Holdings Corp. v.*

2    *U.S. Philips Corp.*, 363 F.3d 1263 (Fed. Cir. 2004).

3        All of the Defendants actively induce doctors and patients to administer Defendants'

4    50 mg/ml and 40 mg/ml solutions for use with eFlow®.  Defendant compounding pharmacies'

5    50 mg/ml and 40 mg/ml tobramycin formulations have no substantial non-infringing uses.

6    Defendant SourceCF actively induces doctors and patients to infringe upon the asserted claims of

7    the '907 patent by paying for and providing Defendant compounding pharmacies with scientific

8    posters comparing Defendants' infringing 100 mg/ml tobramycin formulations to TOBI® in order

9    to demonstrate an equivalent respirable dose.  Defendant SourceCF actively induces doctors and

10   patients to infringe upon the asserted claims of the '907 patent by selling the eFlow nebulizer and

11   actively promoting that device in conjunction with the compounding pharmacies' 50 mg/ml and

12   40 mg/ml tobramycin solutions; Defendant compounding pharmacies actively induce doctors and

13   patients to infringe upon the asserted claims of the '907 patent by actively promoting their

14   tobramycin solutions for use in conjunction with eFlow.

15       **Proposed Facts:  7.1, 7.2, 7.3, 7.4, 7.5, 7.6, 7.7, 7.8, 7.9, 7.10, 7.11, 7.12, 7.13, 7.14,**
16   **7.15, 7.16, 7.17, 8.1, 8.2, 8.3, 9.1, 9.2, 9.3, 9.4, 9.5, 9.6**

17   **3.    Contributory Infringement:  Defendants Contributorily Infringe**
     **Claims 1, 2, 3, 7 and 8 of the '907 Patent.**

18       To succeed on a claim of contributory infringement, "plaintiff must show that defendant

19   'knew that the combination for which its components were especially made was both patented

20   and infringing' and that defendant's components have 'no substantial non-infringing uses.'"

21   *Cross Med. Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir.

22   2005) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir.

23   2004)).

24       Defendants' 50 mg/ml and 40 mg/ml are especially made for use with the eFlow®

25   nebulizer in a manner that infringes the '907 patent.  Moreover, the 50 mg/ml and 40 mg/ml

26   formulations have no substantial noninfringing uses.  Accordingly, by providing the 50 mg/ml

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938
- 22 -
19796\938076.3

and 40 mg/ml formulations to patients and doctors, the RDN pharmacies are contributing to the infringement of the '907 patent.

**Proposed Facts: 2.4, 2.5, 2.6, 2.7, 2.8, 2.9, 5.12, 5.13, 5.14, 5.15. 5.16, 7.4, 7.5, 7.6, 7.7, 7.8, 7.9, 7.11, 7.12, 7.13, 7.14, 7.16, 8.1, 8.2, 8.3, 8.4, 9.1, 9.6**

**4.      Defendants IV Solutions, Foundation Care and PSI Directly Infringe Claims 1, 2, 3, 7 and 8 of the '907 Patent.**

Each of the compounding pharmacies admit that they do not dispute the meaning of any of the terms in Claim 1 of the '907 patent other than "about 60 mg/ml to about 200 mg/ml of tobramycin." Since the meaning of "administering" is not disputed by Defendants in this litigation, it must be given its ordinary meaning, which is "to mete out" or "to give remedially (as medicine)." Webster's Third New International Dictionary of the English Language Unabridged (2002).

Not only do Defendant compounding pharmacies "mete out" or "give remedially (as medicine)" their tobramycin solutions for use with eFlow® by filling prescriptions, each compounding pharmacy actually instructs and assists their patients in the infringing method of administering these solutions. Therefore, the Defendant RDN pharmacies directly infringe the asserted claims of the '907 patent.

**Proposed Facts: 1.7, 7.17, 9.1, 9.2, 9.3, 9.4, 9.5, 9.6**

**5.      Willful Infringement: Defendants Willfully Infringe Claims 1, 2, 3, 7 and 8 of the '907 Patent.**

5.1      <u>Defendants did not exercise a reasonable duty of care to avoid infringement</u>.

"There is no *per se* rule that an opinion letter from patent counsel will necessarily preclude a finding of willful infringement." *Rite-Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1125 (Fed. Cir. 1987). Defendant SourceCF did not obtain an infringement opinion from counsel until after Defendants began their infringing activities, and did not share this opinion with any of the other Defendants. Defendant SourceCF could not have reasonably relied upon the Peterson infringement opinion, as it was based upon a misapplication of the law, a distortion of the facts, and a lack of reliance on anyone skilled in the art. "Such an affirmative duty includes, *inter alia*,

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938
- 23 -
19796\938076.3

1   the duty to seek and obtain competent legal advice from counsel before the initiation of any

2   possible infringing activity."  *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380,

3   1390 (Fed Cir. 1983).  As a result, Defendants did not exercise an affirmative duty of care to

4   avoid infringement.  *See Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004).

5            **Proposed Facts:  3.1, 3.2, 3.3, 10.4, 10.5, 10.6, 10.7, 10.8, 10.9, 10.10**

6            5.2      The RDN Pharmacies Infringed With Knowledge Of The '907 Patent.

7            Despite their almost-immediate awareness of the existence of the '907 patent, both

8   Foundation Care and IV Solutions continued to fill prescriptions of tobramycin solution for use

9   with eFlow® at 100 mg/ml.  Defendants eventually changed the concentration of their

10  tobramycin solutions to 50 mg/ml and 40 mg/ml with the knowledge and expectation that the

11  same total dose would be present in the nebulizer and that the same respirable dose would be

12  delivered to a patient's endobronchial regions when compared to their 100 mg/ml solutions.

13           **Proposed Facts:  2.3, 2.5, 2.7, 2.8, 2.9, 4.4, 7.7, 7.11, 7.12, 8.3, 10.1, 10.2, 10.3**

14

15  DATED:  April 27, 2006                          FARELLA BRAUN & MARTEL LLP

16

17                                                  By:_____/s/_____
                                                          Mark D. Petersen

18                                                  Attorneys for Plaintiff
                                                    CHIRON CORPORATION
19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 30th Floor
San Francisco, CA  94104
(415) 954-4400

PLAINTIFF'S [PROPOSED] FINDINGS OF FACT
AND CONCLUSIONS OF LAW
CASE NO. C-05-01938

- 24 -

19796\938076.3