**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHIRON CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>SOURCECF INC., SOURCECF CLINICAL RESEARCH & DEVELOPMENT, L.L.C., MAXOR NATIONAL PHARMACY SERVICES CORPORATION d/b/a IV SOLUTIONS, FOUNDATION CARE L.L.C., and PHARMACEUTICAL SPECIALTIES, INC.,<br><br>Defendants. | No. C 05-01938 WHA<br><br>**ORDER DENYING MOTION FOR ATTORNEY'S FEES AND VACATING HEARING** |

## INTRODUCTION

In this patent-infringement action, wherein a judgment of non-infringement has been entered after a bench trial, defendants now move for an award of attorney's fees pursuant to 35 U.S.C. 285. Because this order finds that this was not an exceptional case, the motion is **DENIED**.

## STATEMENT

The procedural and factual history of this action has been discussed thoroughly in prior orders and will not be repeated in similar detail here. Briefly, plaintiff Chiron Corporation is the owner of United States Patent No. 6,890,907 ("the '907 patent"). The '907 patent

purportedly disclosed a method of treating lung infections, namely using certain concentrations of liquid tobramycin with high-efficiency nebulizers, for patients suffering from cystic fibrosis.

Plaintiff commenced this action on May 10, 2005. Plaintiffs alleged that defendants SourceCF, Inc., SourceCF Clinical Research & Development, L.L.C., Maxor National Pharmacy Services Corporation (IV Solutions), Foundation Care L.L.C., and Pharmaceutical Specialities, Inc. infringed, induced infringement of and/or contributorily infringed the '907 patent by (1) selling a product called the eFlow inhaler and (2) instructing doctors and CF victims how to use it.

At the time of the issuance of the '907 patent, it was uncontested that the compounding pharmacists were dispensing concentrations of tobramycin of 100 mg/ml for use in the eFlow device. The parties entered into settlement negotiations almost immediately after the filing of this lawsuit, with defendants essentially conceding that such a concentration of tobramycin fell within the claims of the '907 patent. Shortly after these negotiations, the pharmacy defendants stopped filling prescriptions for concentrations of 100 mg/ml. On December 1, 2005, upon the stipulated motion of the parties, this Court granted plaintiff a permanent injunction barring defendants from dispensing concentrations of tobramycin between 60 and 200 mg/ml for use in the eFlow device. By that time, the pharmacy defendants had shifted to dispensing concentrations of 40 mg/ml and 50 mg/ml tobramycin for use in the eFlow device pursuant to physicians' orders.

Chiron then contended that even concentrations of 50 mg/ml or less violated the patent. An issue remaining for trial, therefore, was whether concentrations of 50 mg/ml or less infringed the '907 patent. Given the narrow scope of the dispute, the Court agreed to advance the trial date. To make this workable for the Court's calendar, the parties agreed to narrow the issues for trial. Likewise, plaintiff dropped its claims for money damages.

A bench trial commenced on April 17, 2006, limited to the infringement issue. On May 16, 2006, this Court issued findings of fact and conclusions of law, ruling that defendants were not liable for infringement under either a theory of literal infringement or infringement by the doctrine of equivalents. Defendants now request attorney's fees totaling $667,522.75.

**ANALYSIS**

Pursuant to 35 U.S.C. 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The determination of whether a case is exceptional and, thus, eligible for an award of attorney's fees is a two-step process. The district court must first determine whether the case is exceptional, a question of fact reviewed for clear error. If the case is exceptional, then the district court must then decide whether an award is appropriate. The latter determination is reviewed for abuse of discretion. *Cybor Corp. v. Fas Techs.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc).

The party seeking the award of fees must establish that the case is exceptional by clear and convincing evidence. A case may be exceptional where there has been inappropriate conduct such as willful infringement; fraud or inequitable conduct in procuring the patent; litigation misconduct; vexatious or unjustified or otherwise bad faith pursuit of objectively baseless claims; violations of FRCP 11; or similarly unprofessional behavior. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).

Defendants highlight six examples of purported misconduct in an attempt to establish that this case is exceptional. This order finds that defendants have failed to demonstrate by clear and convincing evidence that any of the alleged conduct makes this case exceptional. This order thus concludes that defendants' motion fails at the first step of the analysis.

*First*, defendants contend that Chiron committed misconduct by inflating its damages claim and then withdrawing the damages claim prior to trial. Defendants have not shown, however, that Chiron "inflated" its estimate of damages. Rather, the parties' experts simply disagreed as to the calculation of damages in this action. Such commonplace disagreements between paid experts do not *per se* constitute litigation misconduct. Likewise, it was not misconduct for Chiron to drop its damages claim prior to trial. Litigation proceeds more expeditiously when the parties agree to narrow the scope of issues. This was particularly true in this action, given that the trial was set on an expedited schedule. It was a benefit to both parties to try the case limited to the remedy of injunctive relief before the Court rather than before a jury. Accordingly, the Federal Circuit has held that a losing party's elimination of issues does

1  not render a case exceptional under Section 285. *See Beckman Instruments, Inc. v. LKB*
2  *Produkter AB*, 892 F.2d 1547, 1553 (Fed. Cir. 1989).

3      *Second*, Chiron committed no misconduct by seeking an award at trial for purported
4  willful infringement. Chiron presented evidence and argument, ultimately unpersuasive, that
5  defendants attempted to create equivalent formulations of tobramycin to a formulation conceded
6  by defendants to be infringing. The fact that Chiron was incorrect as to the equivalence of
7  concentrations of 100 mg/ml and 50 mg/ml does not make the argument so baseless as to fall to
8  the level of exceptional misconduct.

9      *Third*, defendants maintain that Chiron perpetrated misconduct by arguing that
10 defendants were liable for contributory infringement on a "non-staple of commerce" theory.
11 Chiron initially argued that the eFlow device served as nothing more than an device aimed at
12 infringing the '907 patent. Defendants persuasively argued at the final pre-trial conference that
13 the eFlow device had significant other uses such that it constituted a "staple of commerce."
14 Chiron conceded this point at the pre-trial conference. Such a concession is evidence of good
15 faith rather than misconduct. Again, the narrowing of issues by the losing party does not satisfy
16 Section 285. *Beckman*, 892 F.2d at 1553.

17     *Fourth*, defendants argue that Chiron should have never alleged many of its claims,
18 given that many of Chiron's claims whittled away during the course of litigation. Chiron was
19 well within reason to assert a broader range of claims and then narrow them in good faith as
20 discovery and motion practice progressed. Again, especially given the expedited trial date
21 requested by defendants, Chiron did a favor to both parties and the Court by narrowing the
22 scope of the issues for trial. This narrowing does not suggest that Chiron lacked a reasonable
23 belief in the possibility of the success of their claims from the outset. *Beckman*, 892 F.2d at
24 1553.

25     *Fifth*, defendants claim that Chiron had no reasonable basis to contest the application of
26 estoppel to Chiron's doctrine-of-equivalents argument. This Court ultimately found that the
27 incorporation of a prior-art reference into the '907 patent disclaimed the scope of equivalents
28 sought by Chiron. Chiron, however, presented good faith support, in the form of legal and

4

factual argument, for its contention that the incorporation of the prior-art patent did not disclaim any equivalents. Although the Court did not agree with Chiron's position, it nevertheless failed to fall to the level of misconduct on Chiron's part.

*Sixth*, defendants argue that Chiron committed misconduct by maintaining that concentrations of 50 mg/ml or 40 mg/ml of tobramycin literally infringed the '907 patent. This Court found on at least two occasions, in the injunction order and in a pre-trial order regarding the parties' motions *in limine*, that Chiron had presented enough evidence to proceed to trial on its theory of literal infringement. After carefully evaluating all of the relevant evidence, non-infringement was found. Simply losing after trial, however, does not make a case exceptional for purposes of Section 285, particularly where a party's claims have survived attack prior to trial. *See, e.g.*, *Sulzer v. Textil, A.G. v. Picanol N.V.*, 358 F.3d 1356, 1370 (Fed. Cir. 2004).

## CONCLUSION

For the foregoing reasons, defendants' motion for attorney's fees is **DENIED**. Finding no further argument necessary, hearing on this motion is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: June 16, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE